[No. 12989.   In Bank. — January 13, 1892.]

THE PEOPLE ex rel. WILLIAM D. ENGLISH et
al., Respondents, *v.* M. R. ROBERTS, Appellant.

Constitutional Law — Duty on Tonnage — Charge for Use of Wharves
and Landings. — For the use of wharves, landings, and other artificial
means for facilitating the loading of merchandise a charge proportioned
to the tonnage of the vessels using such accommodations may be exacted
by individuals or municipal corporations authorized by the state; and
such charge is not a duty on tonnage within the meaning of section 10
of article I. of the constitution of the United States, which forbids the
states to lay any duty on tonnage without the consent of Congress.

Id. — Regulations of Harbor Commissioners — Dockage. — A charge
against a lighter and barge for the privilege of using wharves, docks,
and slips within the jurisdiction of the state board of harbor commis-
sioners, under regulations of the board fixing the rates of dockage for
such privilege in proportion to the tonnage of the vessels using the
accommodations, it appearing that the board kept the wharves in repair
and the slips dredged, and that but for the dredging the vessels could
not have used the slips, is not a duty on tonnage.

Id. — Distinction between "Dockage" and "Wharfage." — Such charge
for "dockage" is not a violation of section 5 of the act of the legislature
of March 17, 1880, which provides that no "wharfage" is to be collected
upon commerce within the state.   "Wharfage" is the charge against
merchandise for the use of a wharf, while "dockage" is a charge against
vessels for the privilege of mooring to the wharves or in the slips.

Appeal from a judgment of the Superior Court of the
city and county of San Francisco.

The facts are stated in the opinion of the court.

*Rosenbaum & Scheeline,* for Appellant.

Appellant's vessels did not use the wharves, and
therefore the charge is one upon tonnage, and in conflict
with the constitution.   (Const., art. I., sec. 10; *People* v.
*Pacific Rolling Mills Co.,* 60 Cal. 327; *Cannon* v. *New
Orleans,* 20 Wall. 577; *Vicksburg* v. *Tobin,* 100 U. S. 432.)
The appellant is exempt from the charge, because his
vessels were engaged in transferring merchandise be-
tween different points within the state.   (Act of March
17, 1880, secs. 5, 6.)

*T. C. Coogan*, for Respondents.

The state has power to exact charges for the use of wharves and slips which it has constructed or owns in the interest of commerce. (*Steamship Co.* v. *Port Wardens of Louisville*, 6 Wall. 31; *The Tonnage Tax Cases*, 12 Wall. 212; *Peete* v. *Morgan*, 19 Wall. 581; *Cannon* v. *City of New Orleans*, 20 Wall. 577; *Packet Co.* v. *Keokuk*, 95 U. S. 84; *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Vicksburg* v. *Tobin*, 100 U. S. 430.) The state can delegate such power. The right to collect wharfage is a franchise. (*Wiswell* v. *Hall*, 3 Paige, 313; *Dewitt* v. *Hayes*, 2 Cal. 463; 56 Am. Dec. 352; *People* v. *Williams*, 64 Cal. 502; *Cannon* v. *City of New Orleans*, 20 Wall. 577.) The defendant's vessel is not exempt from the charge merely because it was engaged in transferring merchandise between different parts of the state, as the act of March 17, 1880, relied upon by the appellants as sustaining such position, is unconstitutional. (*Guy* v. *Baltimore*, 100 U. S. 443.)

BEATTY, C. J. — This is an action to recover from the owner of a barge and lighter employed in the business of transferring merchandise to and from vessels in the harbor of San Francisco the amount of dockage due under the regulations of the relators, the board of harbor commissioners. The judgment of the superior court was for the plaintiff, and the defendant appeals from the judgment upon the sole ground that the facts as found do not support it.

The findings, among other things, show: —

"2. That bounding upon and within that portion of said bay there are a large number of wharves, docks, and slips, all of which have been constructed by and are owned by the people of the state of California, and plaintiffs, as such board, have jurisdiction over and possession and control of said wharves, docks, and slips. These wharves are about six hundred feet long, extending from the mainland into the waters of the bay, and are about one hundred feet wide, and between them

there are spaces, called slips, of about two hundred feet in width. The wharves are kept in repair, and the slips kept dredged to a sufficient depth to permit vessels of all tonnage to enter them and make fast to and use the wharves, and defendants could not have used said wharves, docks, and slips, as hereinafter found, if they had not been kept in repair and dredged by plaintiffs as such board.

"3. Prior to the twentieth day of November, 1885, said board of state harbor commissioners, pursuant to the powers conferred upon it by law, by an order duly given and made, and entered in the records of its proceedings, fixed and regulated the rates of dockage to be paid by and collected from lighters at one cent per ton per day, whenever said lighters discharged or loaded at any wharf within its jurisdiction and control, or when they discharged into or loaded from any vessel while lying at any of said wharves, or while lying with cargo on board in any of the slips within its jurisdiction and control, and said board, on the twenty-fifth day of June, 1885, fixed and regulated the rates of dockage to be paid by and collected from vessels and all classes of water-craft that might use or make fast to any of the wharves, piers, slips, quays, landings, or thoroughfares within its jurisdiction and control, and at the same time and by the same order fixed and regulated the rates of dockage to be paid by and collected from barges of two hundred registered tons or under, at two cents per ton per day, and that said barges, while taking in cargo, or receiving or discharging ballast, or occupying outside berths, or moored in any of the docks, slips, basins, or canals, should be subject only to half-rates, namely, one cent per ton per day.

"4. Defendant was and is the owner and in possession of the lighter Contra Costa, and on divers days between the twentieth day of November, 1885, and the filing of the said complaint herein, said lighter Contra Costa, by permission of said board of state harbor commissioners, used and occupied various wharves, docks, slips,

within the harbor of San Francisco, and within the jurisdiction and control and possession of said board, in discharging and loading at and upon said wharves, and in discharging into and unloading from vessels lying at said wharves and within said slips, and at all said times said lighter was attached to said wharves by hawsers and lines fastened to the mooring-piles which had been placed there for that purpose by said board; that there is due and unpaid for said dockage, as found in this paragraph, according to the rates established by said board, the sum of $106.10.

"5. That during the same period the same lighter, by permission of said board, used and occupied the various docks and slips within the harbor of San Francisco, and within the jurisdiction and control of said board, in discharging into and loading from vessels lying at said wharves within said slips, and not from the wharves, and at all said times said lighter was attached to the side of said vessels, and not to the wharf, but the vessels were moored up against and fastened to said wharves with hawsers and lines attached to said mooring-piles. The vessels paid the regular rates of dockage to said board. That there is due and unpaid for the dockage of said lighter, as found in this paragraph, according to the rates established by said board, the sum of $11.50.

"6. Defendant was and is the owner and in the possession of the barge Edison, which barge was and is a vessel of 144 tons measurement, and on divers days between the twentieth day of November, 1885, and the filing of said complaint, said barge Edison, by permission of said board, used and occupied various wharves, docks, and slips within the harbor of San Francisco, and within the jurisdiction and control of said board, in discharging and loading at and upon said wharves, and discharging into and loading from vessels lying at said wharves and within said slips, and at all said times said barge was attached to said wharves by hawsers and lines fastened to said mooring-piles; that there is due and unpaid for said dockage, as found in this paragraph,

according to the rates as established by said board, the sum of $36.25.

" 7. That during the same period of time the same barge, by permission of said board, used and occupied the various docks and slips within the harbor of San Francisco, and within the jurisdiction and control of said board, in discharging into and loading from vessels lying at said wharves and within said slips, and not from the wharves, and at all times said barge was attached to the side of said vessels, and not to the wharves, but the vessels were moored up against and fastened to said wharves with hawsers and lines attached to said mooring-piles. These vessels paid the regular rates of dockage to said board. That there is due and unpaid for the dockage of said barge, as found in this paragraph, according to the rates as established by said board, the sum of $31.90.

" 8. Both said lighter and said barge were engaged in transporting freight between different points in the state of California."

It is contended by appellant, upon these facts, that the judgment of the superior court must be reversed for two reasons: 1. Because the charges assessed against the barge and lighter are a duty on tonnage, and therefore that the state law and the regulations adopted by the board are in conflict with section 10 of article I. of the constitution of the United States, which forbids the states, without consent of Congress, to lay any duty on tonnage; 2. Because by section 5 of an act of the legislature passed March 17, 1880 (Stats. 1880, p. 32), no wharfage is to be collected upon commerce within the state.

We do not think that either proposition can be maintained. As to the first, we find that the supreme court of the United States has decided in a number of cases that for the use of wharves, landings, and other artificial means for facilitating the loading of merchandise a charge proportioned to the tonnage of the vessels using such accommodations may be exacted by individuals or

municipal corporations authorized by the states. And the distinction is clearly drawn between such charges for the use of facilities provided at state expense, and tonnage duties levied in the exercise of sovereign power. (*Cannon* v. *New Orleans*, 20 Wall. 577; *Packet Co.* v. *Keokuk*, 95 U. S. 84; *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Vicksburg* v. *Tobin*, 100 U. S. 430.)

The facts of this case, we think, bring it fully within the principle of these decisions. No charge is made against the lighter or barge, except for the use of artificial facilities created by the labor and expenditure of the harbor commissioners, and there is a plain distinction between the privilege of mooring in the slips which are dredged out between the wharves, and anchoring in the bay or along the unimproved water-front. The finding is, that but for the dredging, defendant's vessels could not have used the slips, and this being so, we think, on the principle of the decisions above cited, they are bound to pay for such use, and that the exaction of reasonable charges therefor is no infraction of the constitution of the United States.

As to the second proposition, it is clear that the word " wharfage," in the act of 1880, is used in the same sense in which it is used in section 2524 of the Political Code; that is to say, in contradistinction to the word " dockage." Section 2524 of the Political Code, along with many other important provisions, limits and defines the power of the board of harbor commissioners, and prescribes their duties as to the collection of harbor dues, etc. Throughout the section, the word "wharfage " is used to designate the charge against merchandise for the use of the wharf, while the word " dockage " is used to designate the charge against vessels for the privilege of mooring to the wharves or in the slips. By the act of 1880, domestic shipments were only exempted from *wharfage*, the authority to collect *dockage* being left intact. This being a suit for dockage exclusively, the act of 1880 is inapplicable.

The judgment is affirmed.

GAROUTTE, J., DE HAVEN, J., SHARPSTEIN, J., and HARRISON, J., concurred.

PATERSON, J., and McFARLAND, J., concurring. — We concur. When this case was first argued, our attention was not called to the distinction between wharfage and dockage. The case was argued, considered, and decided upon the assumption that the action was for the recovery of *wharfage.* An inspection of the various provisions of the statute bearing upon the subject shows that the legislature has preserved the etymological distinction between the two terms.